THE WICHITA & WESTERN RAILROAD COMPANY v. GETTE FECHHEIMER.

1. RAILROAD RIGHT-OF-WAY, *No Authority to Grant.* A city council has no authority to grant to a railroad company a right-of-way over private property, nor over a proposed extension of a street which has not yet been opened or extended.

2. LAND, *Taken without Consent of Owner; Remedies.* Where a railroad company enters upon land and constructs its road without the consent of the land-owner, and without making compensation for

the land taken and injured, the owner may pursue any one of the several appropriate remedies, and may, where the road is in its nature, design and use, of a permanent character, elect to bring an action for a permanent appropriation and injury; but in such a case it should appear that the verdict and judgment include damages for the entire injury; and it should also clearly appear from the pleadings, or from the evidence, findings and judgment, what interest in the land the owner has parted with, and also what interest has been acquired by the company.

3. SPECIAL FINDINGS; *Material Error.* It is the right of the parties to have important questions of fact that are based on competent testimony, and which are within the issues of the case, submitted to the jury, and answered upon request; and under the facts and circumstances of this case, the refusal of this right was material error.

### *Error from Sedgwick District Court.*

GETTE FECHHEIMER brought an action against the *Wichita & Western Railroad Company,* alleging that it was a corporation organized and existing under the laws of the state of Kansas, and that on the first day of August, 1883, she was the owner of a tract of real estate situated in Sedgwick county, the boundaries of which were described. She then alleged that —

"On or about the 15th day of August, 1883, the said defendant, without the license or consent of the plaintiff, and against the rights of plaintiff, by its agents, servants and contractors took possession of a strip of land forty rods in length and of twenty-five feet in width, off the south side of the said described piece of land, for the purpose of building and constructing the line of defendant's railroad; that defendant cut down and destroyed a valuable hedge growing thereon, fifteen large shade trees, twenty cottonwood trees, twenty-five fruit trees, twelve hundred heads of cabbage, two acres of tomatoes, pulled up and injured a wire fence, all the property of the plaintiff, and erected wide and high embankments on said strip of land so wrongfully taken by it as aforesaid, put down its iron track, and since said 15th day of August, 1883, and now is, running and operating its railroad upon, across and over said land of plaintiff; that plaintiff's residence is situated on said first-described land, and is about twenty feet from the north line of said twenty-five-foot strip of land, and by defendant's operating and running its engines and cars along and over said land, that its noise, dirt, smoke, obstruc-

tion, and shocking of the ground, whistling and ringing of bells, plaintiff's peace, quiet and comfort are disturbed, and residence and home greatly injured, and said property depreciated in value, and water by said embankments is raised and flowed back upon her land, whereby she is by said wrongful acts of the defendant damaged in her property, house and comfort in the sum of twenty five hundred dollars; by defendant's wrongfully appropriating said twenty-five-foot strip of land and using it as aforesaid, she is damaged in the sum of one thousand dollars; by the defendant's destroying the said trees, cabbage, tomatoes, fence and hedge, she is damaged in the sum of five hundred dollars. Wherefore she claims damages of the said defendant in the sum of four thousand dollars, with interest at seven per cent. from the 15th day of August, 1883, and costs of suit."

The answer of the defendant was, first, a general denial; and second, that the defendant's property was situated within the city of Wichita, a city of the second class, and that before the grievances complained of by the plaintiff, the city council of the city of Wichita opened and extended Orme street beyond and in front of the plaintiff's property, and that prior to the alleged grievances the mayor and council of that city granted to the railroad company a right-of-way over Orme street and in front of the plaintiff's premises, with the right to construct its railroad and maintain and operate the same along the street and in front of the premises of the plaintiff. The railroad company denied that any part of the plaintiff's land was taken or used by the defendant, and denied that she was injured or damaged in any manner by reason of the construction of the road.

At the October Term, 1884, the case was tried with a jury, and a verdict returned against the company for $1,400. A motion for a new trial was overruled, and judgment given in favor of the plaintiff. The defendant brings the case here for review.

*Geo. R. Peck, A. A. Hurd, W. C. Campbell,* and *Houston & Bentley,* for plaintiff in error.

*John R. Parsons,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: Gette Fechheimer is the owner of a tract of land within the limits of the city of Wichita. The mayor and council of that city granted the Wichita & Western railroad company a right-of-way over Orme street, and the ordinance by its terms also granted a right-of-way over a proposed extension of that street from its western terminus to the Arkansas river. The so-called extension would pass over and along the south side of the premises of the defendant in error; but the fact is that the extension was only in contemplation, as the street had not yet been opened or extended through or past her land. It was shown in the evidence that the railroad company entered upon her premises and built its road before any steps had been taken to extend the street. It also appears that the company went upon the land, erected embankments, cut down hedges and trees, destroyed vegetables and other property without her consent, without having taken any steps to legally appropriate it or condemn a right-of-way over it, and without making compensation. It cannot be claimed that

1. Railroad right-of-way, no authority to grant.

the action of the city council gave the railroad company any right beyond the then terminus of Orme street, or justified in any degree its trespass upon and taking of the property of the defendant in error without compensation. The first objection urged here is, that the court tried the case upon the theory of a permanent appropriation, while the issue raised by the pleadings was a temporary injury resulting from the trespass committed by the plaintiff in error. The allegations of the petition do not very clearly indicate the purpose of the pleader. Some of them are framed upon the apparent theory of a recovery for only such damages as had accrued up to the commencement of the action, while others are stated upon the theory of an appropriation of and permanent injury to the land of defendant in error. If it is a simple action of trespass to recover for past injury, then much of the evidence admitted and the instructions of the court were improper. The verdict and judg-

ment in such a case would not include the value of the land, and would not bar an action for future injuries, or an action in ejectment to recover the possession of the premises taken. The action of the company in going upon her land and constructing its road without authority and without making compensation, was without justification; and the trespass furnished grounds for maintaining an action of ejectment or injunction, or to recover damages for the injuries consequent upon the trespass.    The defendant in error was at liberty to choose any one of several appropriate remedies; but if the pleadings only warranted the recovery of compensation for the damages occasioned by the company down to the time of bringing the suit, the judgment would not operate to transfer any title or easement to the company.    She now says that she elected to bring her action for a permanent appropriation and injury, and tried the case upon that theory; and probably the allegations of the petition may be regarded as sufficient to accomplish that purpose. The railroad, in its nature, design and use, is of a permanent character.    Besides, the construction of the railroad bridge over the Arkansas river near the injured premises shows that the company treated and intended the road as a permanent structure, and as most of the injuries complained of are permanent in their nature, we think she could elect to bring her action for all present and future damages.    The manner in which she conducted the case, and the testimony offered by her, indicate that she was seeking a recovery of compensation for the entire injury, present and prospective.    The rulings of the court in the admission of testimony, and the instructions given in regard to the measure of damages, indicate that the court proceeded upon the same theory.    In order to bar any future actions for damages, and to make the present action conclusive between the parties, it should clearly appear either by the admissions in the pleadings or from the evidence and judgment, just what interest the land-owner has parted with, and what has been acquired by the company.    If from the record we could ascertain the quantity and boundaries of the

2. Land, taken without consent of owner; remedies.

land taken, and interest acquired by the company, and that the value thereof was included in the verdict and judgment, we might be justified in holding the case one for permanent appropriation and injury. An examination of the record, however, leaves us in considerable doubt on this question. But if we take the view of the defendant in error, that she could and did elect to treat the trespass as a permanent appropriation and injury, we are still compelled to reverse the judgment. The defendant below asked twenty-seven questions of fact, all but six of which the court directed the jury not to answer. Quite a number of the questions asked might well have been allowed; but in view of the testimony, the disallowance of some of them was not material error. Among those that were disallowed, and are deemed material, we quote the following:

" Q. 19. What portion of the defendant's premises, if any, was actually occupied by the defendant at the commencement of this action and before, if any?"

" Q. 22. What portion of damages do you allow the plaintiff in your general verdict by reason of the occupation of a portion of the premises of the defendant, if any?"

" Q. 25. What damage do you allow in your general verdict by reason of the alleged overflow of the plaintiff's premises?"

Question 19 related to one of the essential matters in dispute. There was testimony upon the question, and if the theory of the defendant in error is to be adopted, it is highly important to both of the parties that the quantity of land taken should be found and stated. The inquiry embraced in question 22 is of equal or greater importance. The defendant in error alleged in her petition that by reason of the taking and occupation of a portion of her premises, she was damaged in the sum of $1,000. This is one of the chief elements of damage upon which she offered proof, and the testimony of the respective parties on this question is contradictory. Another of the principal facts upon which testimony was given, was whether the construction of the road resulted in an overflow of the plaintiff's premises, and much testimony was received in an attempt to establish the damage caused by the

overflow. According to the testimony of the defendant in error, this was one of the principal elements of damage in the case, while the plaintiff in error claimed and sought to show that no overflow had been occasioned by the embankments which it had erected, and no damage accrued to the defendant in this respect from the building of the road. The question therefore embodied a material question in the case which was based on the evidence, and the defendant had a right to know what amount of injury, if any, was done in that way. It was the right of the plaintiff in error to have important questions of fact like these submitted and answered by the jury. They were based on competent testimony, and were within the issues of the case; and in view of the theory on which the case was tried, and the doubt respecting what damages are included in the verdict and judgment, we think the refusal

3. Special findings; material error.

to submit the questions is material error. (*Bent v. Philbrick,* 16 Kas. 190; *City of Wyandotte v. Gibson,* 25 id. 243; *A. T. & S. F. Rld. Co. v. Plunkett,* 25 id. 198; *Morrow v. Comm'rs of Saline Co.,* 21 id. 484.)

The judgment of the district court will therefore be reversed, and the cause remanded for another trial.

All the Justices concurring.